## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LEROY JETER, III #336-829          *

     Petitioner                     *

          v                         *          Civil Action No. DKC-12-2496

GREGG L. HERSHBERGER, et al.,       *

     Respondents                    *
                       ***

### MEMORANDUM OPINION

Petitioner Leroy Jeter, III (hereinafter "Jeter") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.  Pending is Jeter's Petition for Writ of Habeas Corpus as amended (ECF Nos. 1 and 8),[1] Respondents' Response as supplemented (ECF Nos. 6 and 13), and Jeter's reply thereto (ECF No. 14).[2]  After review, the court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

---

[1] Jeter initially maintained that trial counsel was ineffective (1) for presenting a guilt-based defense without his consent; (2) for informing the jury that he had committed the crime; and (3) for sharing privileged communication with the prosecutor and the jury. ECF No. 1 at 7-8. Jeter admitted that his final ground, (4) ineffective assistance of trial counsel due to "abandonment of Petitioner's interest by repeatedly expressing contempt for Petitioner at trial and portraying Petitioner as violent and dangerous, effectively acting as a second prosecutor," was not directly raised on post-conviction, but stated that all the issues presented regarding ineffective assistance "build on this one issue…[which is] the main issue in which I am being held unlawfully." *Id.* at 8, Item 16.  Respondents argued that Jeter's Petition should be dismissed in its entirety, unless he waived review of one unexhausted claim. ECF No. 6. Jeter then waived his unexhausted claim and indicated he would proceed instead with eleven of the twelve ineffective assistance of counsel claims, the claim of prosecutorial misconduct, and the cumulative error claim he had presented in state post-conviction proceedings. ECF No. 8.

[2] Jeter requests appointment of counsel. ECF No. 8, p. 3.  While there is no Sixth Amendment right to counsel to pursue a petition for habeas corpus, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), a court may provide counsel for an indigent prisoner pursuing a petition for habeas corpus if "the court determines that the interests of justice so require."  18 U.S.C. § 3006A(2)(B).  Rule 6(a) of the Rules Governing Section 2254 Cases provides that a court may appoint counsel if it is "necessary for effective utilization of discovery procedures."  Rule 8(c) mandates that counsel be appointed only "[i]f an evidentiary hearing is required."  Here, Jeter has adequately articulated his claims, the issues presented are not unduly complex, and an evidentiary hearing is not warranted.  Appointment of counsel is therefore denied.

## Background and Procedural History

Jeter was charged in the Circuit Court for Baltimore County for attempted murder and related offenses and on April 25, 2006, was tried before a jury and convicted of first- and second-degree assault in connection with the stabbing of Sandra Cook.[3]   ECF No. 6-1; ECF No.

---

[3] As recounted by the Court of Special Appeals of Maryland, the evidence adduced at trial was the following:

State's witness Linda Cramer, appellant's girlfriend, decided on August 24, 2005, to spend an evening socializing with a co-worker, 19-year-old Sandra Cook.  Ms. Cramer opted to take her two young children to appellant for the evening.  Appellant, who was 26 years old, was at the Deluxe Motel on Pulaski Highway visiting a friend. He had no knowledge of Ms. Cramer's plan prior to her arrival.

Ms. Cook and her friend, Jessica Nieves, drove Ms. Cramer and the two children to the motel.  Ms. Cramer had been drinking vodka prior to her arrival at the motel.  An argument ensued between appellant and Ms. Cramer over her alleged drinking alcohol while taking prescription drugs, which endangered the children.

When the argument ended, appellant took both children and left the motel. According to Ms. Cramer, she changed her mind about leaving the children and she called the police.  Thereafter, she, Jessica, and Sandra returned to the apartment shared by Ms. Cramer and appellant.  [Ms]. Cramer testified that 30 minutes later appellant and the children arrived at the apartment and a heated argument resumed.  Allegedly, appellant began shoving and hitting her "for less than a minute" and then went into the kitchen and returned with a knife. According to appellant, however, she had the knife and he took it from her.  Ms. Cramer ran from the apartment and, according to appellant, when Sandra announced that she was calling the police, he lunged to grab the telephone and accidentally stabbed Sandra.  He stated that he tried to grab the telephone because he did not want to be arrested.

The victim, Sandra Cook, testified that

they were hitting each other and then she ran out of the apartment and he went into the kitchen and I saw him come out with a knife and I screamed I was going to call the police. . . and he came back and jumped across the couch and said "give me the phone bitch" and grabbed the phone and stabbed me and ran out of the house.

Ms. Cook was transported to a hospital and underwent surgery for a collapsed lung resulting from a stab wound above her left breast.  She described the knife as a steak knife with a four or five inch blade.

Two other witnesses testified to the incident:  Jessica Nieves and Andre Matteo, Sandra Cook's boyfriend.  Ms. Nieves was a friend of Ms. Cook.  She testified that she saw appellant come out of the kitchen with a knife and go toward the front door.  When Sandra said she was calling the police, appellant turned and jumped over the couch and grabbed the phone and stabbed her.  Mr. Matteo testified that he saw the fight between Ms. Cramer and appellant, he heard

6-2, ECF No. 6-4. Jeter's defense at trial was that the stabbing was an accident. ECF No. 13-1, p. 12; ECF No. 13-3, pp. 50-51; ECF No. 13-6, p. 5. On April 26, 2006, the jury found Jeter guilty of first- and second- degree assault, but acquitted Jeter of attempted murder. On July 10, 2006, he was sentenced to serve twenty years' imprisonment.[4] ECF No. 13-5, p. 15.

On appeal, Jeter raised the following claims:

1. Did the trial court err by failing to find that the State used all five of its peremptory challenges in a facially discriminatory manner to strike African-American and Hispanic members of the venire pool?

2. Did the trial court err by sending written instructions into the jury room in response to a question during deliberations? and

3. Was the trial court's sentence based on impermissible considerations?

ECF No. 6-2, p. 2. On June 26, 2008, the Court of Special Appeals of Maryland affirmed Jeter's judgment of conviction. ECF No. 6-4. Further review was denied by the Court of Appeals of Maryland on September 12, 2008. ECF No. 6-6. Jeter did not seek further review in the Supreme Court of the United States; thus, his judgment of conviction became final for direct appeal purposes on December 11, 2008. *See* Sup. Ct. Rule 13.1.

---

silverware "rustling" in a kitchen drawer when appellant was in the kitchen, and he saw appellant stab Ms. Cook once in the chest.

The State's final witness was Dr. Thomas Nadani, a resident surgeon at the Johns Hopkins Bayview Medical Center, who performed the surgery necessary to evaluate and treat the injuries sustained by the victim Sandra Cook. In layman's language, Dr. Nadani testified that Ms. [C]ook sustained a serious blood loss amounting to "around 30 percent or a little more of her total blood volume." The knife penetrated the chest wall, the pleura (lining of the lung), and the lung. According to the expert witness, "it takes a significant amount of force to actually penetrate the chest wall." Dr. Nadani concluded that the single stab wound was "a serious injury, that if the patient did not have surgery, there would be a strong risk that the patient would die."

ECF No. 6-4, pp. 2-4 (footnote omitted).

[4] A July 31, 2006, application for review of sentence was denied on October 16, 2006. ECF No. 6-1, p. 6.

Jeter instituted state post-conviction proceedings on September 11, 2009.  ECF No. 6-1, p. 7.  In an original and amended petition and as construed by the post-conviction court, Jeter alleged that:

    (A)    trial counsel was ineffective for:

        (1) presenting a guilt-based defense;

        (2) not objecting to the trial court's jury instructions;

        (3) disclosing a privileged communication;

        (4) informing the jury that he committed the alleged criminal act;

        (5) failing to present a defense;

        (6) failing to object to the State's opening statement;

        (7) stipulating to admission of the 911 tape;

        (8) failing to present character witnesses;

        (9) failing to object to hearsay testimony;

        (10) failing to file a motion for reconsideration of sentence;

        (11) admitting wrongdoing to the jury without his permission; and

        (12) not knowing that he was not indicted for stabbing Linda Cramer;

    (B)    the prosecutor committed misconduct by stating he assaulted Linda Cramer; and

    (C)    the cumulative effect of these errors warranted relief.

ECF No. 6-7; ECF No. 6-8.

After a hearing held on August 6, 2010, Jeter was granted the right to file a belated motion for reconsideration of sentence but the petition for post-conviction relief otherwise was denied.  ECF No. 6-1; ECF No. 6-9.  Jeter filed an application for leave to appeal the denial of post-conviction relief on all grounds.  ECF No. 6-10.  On July 31, 2012, the Court of Special

Appeals summarily denied the application; the mandate issued on August 31, 2012.  ECF No. 6-10; ECF No. 6-11.

## Preliminary Matters

### Exhaustion of State Remedies

Respondents do not contend that the grounds presented by way of amendment are unexhausted.

### Statute of Limitations

Respondents do not contend – and the court does not find – that the Petition is time-barred pursuant to 28 U.S.C. § 2244(d).

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  This standard is "highly deferential" and "difficult to meet."  *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011); *see also White v. Woodall*, 2014 WL 1612424 *4 (April 23, 2014), __ U.S. __, 134 S.Ct. 1697, quoting *Harrington v. Richter*, 562 U.S_, ___131 S. Ct. 770, 786-87 (2011) (state prisoner must show that state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. **"**[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*." Renico v. Lett,* 559 U.S 766, 773, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.  Jeter has failed to meet the high standard meriting habeas corpus relief, for reasons addressed below.

### Analysis

## I. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel so defective as to require reversal of a conviction, Jeter must pass the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  He must first demonstrate that the performance of his counsel was so deficient as to fall below an objective standard of reasonableness.  *Id.* at 687-88.  He must also demonstrate that his counsel's defective performance prejudiced his defense and deprived him of a fair trial.  *Id.* at 687.  The Supreme Court has made it clear that courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered a sound trial strategy.'"  *Id.* at 689.  In the context of a § 2254 proceeding, it is not sufficient to convince the federal habeas court that the state court merely applied *Strickland* incorrectly.  Rather, Jeter must show that the state court applied *Strickland* to the facts in an objectively unreasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Jeter asserts claims of ineffective assistance based on counsel's: (1) presentation of a guilt-based defense; (2) failure to object to the trial court's jury instructions; (3) disclosure of a privileged communication; (4) informing the jury that he committed the alleged criminal act; (5) failure to present a defense; (6) failure to object to the State's opening statement; (7) stipulating to admission of the 911 tape; (8) failure to present character witnesses; (9) failure to object to hearsay testimony; (10) admitting wrongdoing to the jury without his permission, and (11) not knowing that he was not indicted for stabbing Linda Cramer.  ECF No. 1 at 7-8; ECF No. 8.

The state post-conviction court examined and rejected each of these claims:

> Petitioner alleges twelve (12) separate errors against his trial and sentencing counsel, Terry Lavenstein, Esquire.  Specifically, petitioner alleges that trial counsel used a guilt based defense without Petitioner's consent.  Next, he argues counsel erred by not objecting to the lack of addition of the phrase "beyond a reasonable doubt" when supplemental jury instructions were read.  Third, Petitioner alleges that counsel violated attorney-client privilege by conveying information at trial that was privileged.  Petitioner also argues that counsel violated Petitioner's due process rights by informing the jury that Petitioner had committed the act for which he was accused.  Next, Petitioner alleges that counsel erred by failing to present a defense.  In his amended petition, Petitioner argues the final seven errors, beginning with the contention that counsel erred by not objecting during the State's opening in which an assault on Linda Cramer was mentioned.  Next, Petitioner argues it was error to stipulate to the 911 tape.  Petitioner's eighth accusation is that counsel failed to present a character witness even though Petitioner had given counsel a list of potential candidates.  Next, Petitioner contends counsel failed to object to hearsay evidence.  Petitioner's tenth argument is that counsel failed to file a Motion for Reconsideration of sentence after Petitioner had requested it.  Petitioner also argued that counsel admitted wrongdoing to the jury without the Petitioner giving counsel permission to make that admission.  Finally, Petitioner argues that counsel erred by not knowing that Petitioner was not indicted for stabbing Ms. Cramer.

Answer

Relief on this allegation is denied.  It is important to note Mr. Lavenstein's experience when evaluating the reasonableness of his representation.  At the time of the trial in this matter, Mr. Lavenstein had been practicing attorney in the State of Maryland for more than 20 years.  Mr. Lavenstein was found to be a credible witness at the post-conviction hearing.   The only other testimony came from the Petitioner, who was found not to be credible at all.

Under Petitioner's first allegation of error, ineffective assistance of counsel, Petitioner makes twelve separate points as to why he believes Mr. Lavenstein's representation was unsatisfactory.   However, each of Petitioner's averments fails to demonstrate that Mr. Lavenstein's representation was ineffective.  Petitioner states that Mr. Lavenstein used a guilt based defense without Petitioner's consent.   Specifically, Petitioner argues that counsel was ineffective in arguing the defense of accident because Petitioner never agreed to that defense strategy.  Petitioner, at his post-conviction hearing alleged that he wanted counsel to argue that Petitioner was not present at the crime scene.  However, Petitioner had admitted to counsel that he was at the crime scene.  Mr. Lavenstein testified at the post-conviction hearing that Petitioner never even told him that he was not present at the crime scene. Therefore, it would be impossible and unethical for Mr. Lavenstein to make an argument that he knew was patently false.  Because of this, Petitioner fails on his first allegation.

Petitioner's second ineffective assistance claim is regarding counsel's failure to object to the supplemental jury instructions not including the term "beyond a reasonable doubt."   This allegation also fails because Mr. Lavenstein did object when the supplemental instructions went back.  Furthermore, Judge Bollinger used the phrase "beyond a reasonable doubt" six times when giving jury instructions.

Petitioner next argues ineffective assistance because counsel violated attorney-client privilege by using privileged information given from the Petitioner to counsel without permission.  Even if the Petitioner, who was not found to be credible is accurate in this allegation, any privileged information given was done as part of a sound trial strategy that ultimately assisted the Petitioner in being found not guilty of attempted murder.  Therefore, there was absolutely no prejudice, so this allegation fails as well.

Petitioner's fourth ineffective assistance allegation involves counsel informing the jury that Petitioner had indeed committed the crime, which violated Petitioner's right to due process.  Specifically, Petitioner feels it was inappropriate for counsel to concede an assault took place.   As stated

throughout this opinion, the admission of the physical occurrence was part of the accident defense.  Counsel made a trial strategy to argue the accident defense.  In such a defense, the *mens reus* becomes the point of contention, not the *actus reus*.  Therefore, the admission is an intricate part of the defense itself.  It is not ineffective assistance of counsel.

Next, Petitioner argues that trial counsel failed to present a defense.  This allegation is completely without merit as Mr. Lavenstein not only prepared a defense, but prepared a defense that spared the Petitioner from being convicted of attempted murder.

In his supplement, Petitioner argues that Mr. Lavenstein committed ineffective assistance of counsel for discussing other crimes evidence, or more specifically, an assault against Linda Cramer.  Petitioner argued at his hearing that it was not an assault, rather, it was an argument that involved punching and slapping.  However, Petitioner fails to realize the simple legal definition of an assault.  Any sort of unwanted or offensive physical contact, or even the threat of it can constitute an assault.  Petitioner freely admitted that there was punching and/or slapping.  Therefore, this allegation fails as well.

Next, Petitioner posits that Mr. Lavenstein was ineffective for [stipulating] to the 911 tape.  This allegation fails for the simple reason that the people on the tape testified at trial to the same information as was on the tape.

Petitioner's next allegation of ineffective assistance is that Mr. Lavenstein failed to call a character witness in Petitioner's defense at trial.  Again, Petitioner was not found to be a credible witness.  He argues that he provided a list of character witnesses to counsel but he refused to call them.  However, at his post-conviction hearing, with new counsel at his side, he neglected to call any character witnesses either.  Therefore, it is unlikely that a list was ever provided to trial counsel.

Petitioner also argues that Mr. Lavenstein was ineffective because he failed to object to hearsay evidence at trial.  However, the instances allegedly deal with one witness saying what another said.  Since the other witnesses also testified at trial, the need to object is overcome.  Hearsay objections, while they may have been sustained, would only result in the same information coming out later when the actual witness testified.  Accordingly, this allegation also fails.

Next, Petitioner argues that Mr. Lavenstein failed to file for a reconsideration of sentence even after Petitioner had asked him to file everything that he was entitled to.  Mr. Lavenstein testified that he did not think he had any further contact with the Petitioner.  He also stated that he had no "specific recollection" of this conversation.  Because it is unclear whether this request

was formally or informally made by the Petitioner, this Court finds it appropriate to grant the Petitioner's request and allow him to file a belated Motion for Reconsideration.

Petitioner next makes yet another contention regarding counsel making an admission to the jury without Petitioner giving consent.    Again, any admissions were made as part of a successful defense of accident.    Mr. Lavenstein testified that he discussed this defense before trial with the Petitioner.  Once again, this allegation is denied.

Finally, Petitioner argues that Mr. Lavenstein was ineffective for not being aware that Petitioner was not indicted for stabbing Ms. Cramer.  This issue has been discussed thoroughly throughout this opinion.    This is a vague variation of previous arguments.  Ms. Cramer testified at trial, so any chance to elicit any and all information from her did occur. This vague allegation does not result in ineffective assistance either.

To be successful on a post conviction claim of ineffective assistance of counsel, a Petitioner must show both (1) that counsel's performance was deficient and (2) that the alleged acts or omissions of counsel prejudiced the Petitioner's defense.  *Strickland v. Washington*, 102 S.Ct. 2052, 2064 (1984). In *Harris v. State*, 303 Md. 685 (1985), the Court of Appeals adopted the reasoning of Strickland and held that unless a Petitioner can affirmatively establish both prongs of the Strickland analysis, he is not entitled to post conviction relief predicated upon ineffective assistance of counsel.  None of the contentions of error raised by the Petitioner in this case satisfy the prongs of the *Strickland* test, and thus relief is denied.

### Deficiency Prong

To prevail on the deficiency prong of the *Strickland* analysis, a Petitioner must establish that counsel's "acts or omissions ... are the result of unreasonable, professional judgment, and that counsel's performance, given all the circumstances, fell below an objective standard of reasonableness considering prevailing professional norms."  *State v. Tichnell*, 306 Md. 428 (1986).   For the reasons stated above, it is this Court's conclusion that [counsel's] representation was not deficient.

### Prejudice Prong

Since the Petitioner was unable to meet the requirements of the deficiency prong, an analysis of the prejudice prong is unnecessary.

ECF No. 6-9, pp. 2-7.

The state post-conviction court's resolution of Jeter's ineffective assistance of counsel claims was a reasonable application of *Strickland*.  Indeed, the record contains evidence that Jeter tried to kill Cook, and witness testimony that would fully support an attempted murder conviction.  *See, e.g.*, ECF No. 6-4, pp. 2-4.  Based on counsel's accident defense, which even post-conviction counsel recognized as "a very successful defense," ECF No. 13-6, p. 48, the jury acquitted Jeter of attempted murder, the best possible result Jeter could expect under the circumstances.  ECF 13-6, pp. 9-11.

To the extent Jeter asserts that counsel improperly pursued an accident defense that placed Jeter at the scene and acknowledged that his actions caused Cook's life-threatening injuries, as counsel explained at the post-conviction hearing, the accident defense was "all we had."  *Id.,* Ex. 15, p. 6.  Jeter not only admitted to counsel that he was on the scene, there were eyewitnesses, who observed Jeter stab the surviving victim, Cook.  As the prosecutor explained in the post-conviction proceedings, had defense counsel pursued an argument that Jeter was not at the scene, Jeter almost certainly would have been convicted of attempted first-degree murder.  *Id.,* Ex. 15, pp. 53-56.  The sole defense was the one pursued:  counsel, after consulting with Jeter, simply confronted the truths that Jeter was at the scene of the crime and that a dispute erupted between him and Cramer.  Counsel's presentation persuaded the jury to find that in the confusion of the moment, Cook accidentally was stabbed.  Due to counsel's diligence, Jeter was spared conviction for attempted murder (and the possibility of a life sentence).

Jeter's claims that counsel was constitutionally ineffective for failing to object to the court's jury instructions, failing to object to the prosecutor's opening statement, stipulating to the 911 tape, failing to present character witnesses, failing to object to hearsay evidence, and failing to know that he was not indicted for stabbing Linda Cramer are frivolous and did not prejudice

Jeter's defense.   Jeter's claims of ineffective assistance of counsel fail under 28 U.S.C. §

2254(d).

## 2.      Prosecutorial Misconduct

Jeter contends that the prosecution committed misconduct by stating in opening statement

that he assaulted Linda Cramer.   ECF No. 1, pp. 7-8; ECF No. 8.   The post-conviction court

rejected this allegation, stating:

> Petitioner alleges one (1) allegation of Prosecutorial Misconduct.
> Specifically, he argues that it was inappropriate for the prosecutor
> at trial to mention an assault of Linda Cramer, who Petitioner
> claims he did not assault.
>
> This allegation fails for the reasons stated above. Petitioner
> testified at his post-conviction hearing that there [was] not an
> assault, but rather an argument with punching and slapping.
> Clearly, the Petitioner does not understand that whether or not an
> assault was ever actually charged does not overcome his own
> admission to acts that unmistakably constitute an assault by the
> legal definition.

ECF No. 6-9. pp. 7-8.

The state court's determination was reasonable.   Jeter has failed to show any

prosecutorial misconduct, much less any deliberate misconduct of "'sufficient significance to

result in the denial of the defendant's right to a fair trial.'"   *U.S. v. Bagley*, 473 U.S. 667, 676

(1985) (quoting *U.S. v. Agurs*, 427 U.S. 97, 108 (1976)).   The prosecutor's opening statement

was a proper summary of the evidence the State expected to produce at trial, and the post-

conviction court's rejection of Jeter's claim was not an unreasonable application of Supreme

Court law.   Jeter's claim of prosecutorial misconduct provides no basis warranting federal habeas

relief under 28 U.S.C. § 2254(d).

**3.      Cumulative Error**

Finally, Jeter claims the cumulative effect of counsel's performance and the misconduct of the prosecutor deprived him of a fair trial.  The Fourth Circuit, along with a majority of circuits, does not recognize the cumulative effect doctrine where none of the alleged errors of trial counsel amount to constitutional error.  *See Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998).  The undersigned has reviewed each alleged error on its merits and concurs with the post-conviction court's finding that none merits habeas corpus relief.  Thus, the cumulative effect doctrine is inapplicable.

**Conclusion**

For the foregoing reasons, Jeter's Petition for Writ of Habeas Corpus is denied.  A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2000).  To satisfy this standard, a petitioner must demonstrate that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  Because reasonable jurists would not find Jeter's claims debatable, a certificate of appealability shall not issue.

A separate Order shall be entered in accordance with this Memorandum Opinion.


Date:   May 9, 2014                                    _____/s/_____
                                                        DEBORAH K. CHASANOW
                                                        United States District Judge